IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| GOTHAM INSURANCE COMPANY, | ) | CV 11-39-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ALLEGIANCE BENEFIT PLAN | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| ALLEGIANCE BENEFIT PLAN | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Third-party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID WASH, MUTUAL MARINE | ) | |
| OFFICE, INC., AND EXCEL | ) | |
| UNDERWRITERS ALLIANCE, INC., | ) | |
| | ) | |
| Third-party Defendants. | ) | |
| _____ | ) | |

This is a declaratory judgment action. Allegiance Benefit Plan Management is a third-party administrator for employee benefit plans. Gotham Insurance Company provided Allegiance with an errors and omissions insurance policy.

Gotham seeks a declaration that it has no duty to defend or indemnify Allegiance for a claim that Whitney Gendron, a plan participant, made against Allegiance. Gotham, Allegiance, and the third-party defendants all move for summary judgment. (*See* docs. 70, 77, 80, 83.) Gotham's motion as to its claim for declaratory relief is granted. Allegiance's motion is denied. Gotham's motion as to its rescission claim is moot so it is denied. Mutual Marine Office's and Wash and Excel Underwriters Alliance's motions for summary judgment are also granted.

There are three motions in limine from Gotham and the third-party defendants (docs. 108, 110, 112), two motions for leave to file sealed documents from Gotham and the third-party defendants (doc. 92, 106), and Allegiance's motion for leave to file a response to objections made by Gotham (doc. 136) that are also pending. The motions for leave to file certain documents under seal are granted, but the other pending motions are denied as moot.

## BACKGROUND

This case arises out of a 2007 car accident involving Whitney Gendron, who was injured in a car accident. At the time, she received health care benefits through the Montana University System Employee Group Benefits Plan.[1]

---

[1] The plan is not subject to ERISA because it is a governmental plan. *See* 29 U.S.C. § 1003(b)(1).

Allegiance was acting as the third-party administrator for that plan. Allegiance, at the time, had an errors and omissions policy (the "2008–2009 Policy") underwritten by Gotham. (2008-2009 Policy, Ex. 1, doc. 89-1.)

On August 26, 2008, Gendron's attorney—Hillary Carls—wrote Allegiance a letter indicating her belief that Allegiance had wrongfully denied coverage for some of Gendron's medical expenses. (*See* Carls Correspondence, doc. 72-2.) Carls submitted that letter, and several others, to Allegiance during the 2008–2009 Policy Period, which ran from May 31, 2008, through May 31, 2009. (*See id.*, doc.72-2 to 72-10.) Carls apparently received no response from Allegiance until March 31, 2009. (*Id.* at 72-6.) In the response, Susan Witte, General Counsel for Allegiance, sent Carls the "subrogation, reimbursement and coordination of benefits provisions of the Montana University System Plan." (*Id.*)

On April 3, 2009, Carls again wrote to Witte and argued that Allegiance could not enforce its right of subrogation until Gendron had been fully compensated for her injuries. (*Id.* at doc. 72-7.) Carls claimed that Gendron had not been fully compensated and that she would recommend that Gendron file a declaratory class action against Allegiance if it did not reimburse Gendron's medical expenses.

On October 5, 2009, Gendron sued Allegiance in state court. (Doc. 63-4.)

She filed the complaint individually and on behalf of a class. The complaint generally alleges violations of Montana's Unfair Trade Practices Act and its "made whole law," as set out in *Swanson v. Hartford Ins. Co. of the Midwest*, 46 P.3d 584 (Mont. 2002). (*See id.*)

On February 25, 2010, Allegiance made its first attempt to contact Gotham about the *Gendron* lawsuit. Allegiance phoned and e-mailed third-party defendant David Wash, who Allegiance claims was acting as an agent for Gotham and was responsible for servicing its insurance policies. Wash was employed by Excel Underwriters Alliance and was working on behalf of Mutual Marine Office. Wash, along with Excel Underwriters Alliance and Spirit Underwriters had previously entered an "Insurance Agent's Errors and Omissions Insurance Program Management Agreement" with Gotham Insurance Company and New York Marine & General Insurance Company. (*See* Program Management Agreement, doc. 90-5.) That agreement permitted Wash to issue policies on Gotham's behalf.

One of the central issues in this case is whether Allegiance's communications with Wash constituted proper notice of Gendron's claim under the Policy. Gotham claims that it did not and, as a result, the Policy does not cover Allegiance for Gendron's claims.

Gotham filed this declaratory judgment action on March 1, 2011. It filed its

First amended Complaint on April 18, 2012. (Doc. 63.) The First Amended Complaint contains two claims. The first claim seeks a declaration that Gotham has no duty to defend or indemnify Allegiance in the *Gendron* lawsuit because Allegiance did not provide proper notice to it and failed to comply with other provisions of the 2008–2009 Policy. In the second claim, Gotham alternatively claims that there is no coverage for Allegiance because the 2009–2010 Policy should be rescinded as a result of Allegiance's alleged failure to identify the *Gendron* action in its policy renewal application

Allegiance filed a third-party complaint on April 18, 2011, against Wash, Mutual Marine Office, and Excel Underwriters Alliance. (Doc. 11). The thrust of Allegiance's argument is that Wash acted as Gotham's agent and represented that he had authority to take notice of Gendron's claim. Allegiance argues that, if the Court concludes that Allegiance could not give proper notice through Wash, then Wash should be liable based on his representations to Allegiance.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

**ANALYSIS**

### I.      Allegiance's notice of Gendron's claim

Allegiance and Gotham cross-move for summary judgment on the same issue—whether Allegiance gave Gotham proper notice of Gendron's claim. Gotham has no duty to defend or indemnify Allegiance for the *Gendron* action because Allegiance's notice, if any, was untimely and Gendron's claim are therefore not covered.

### A.      Contract interpretation

The most important questions in this case are questions of contract interpretation. Courts should apply the plain language of a contract, unless the contractual language is ambiguous. *Anaconda Pub. Schs., Bd. of Trustees of Anaconda Sch. Dist. No. 10 v. Whealon*, 268 P.3d 1258 (Mont. 2012). "Whether an ambiguity exists in a contract is a question of law." *Id.* (quoting *Mary J. Baker Revocable Trust v. Cenex Harvest Sts., Coops., Inc.*, 164 P.3d 851, 857 (Mont. 2007)).

Montana courts may look to extrinsic evidence both to determine whether an ambiguity actually exists and then to resolve that ambiguity. *Anaconda Pub. Schs.,* 268 P.3d at 1262 (citing Mont. Code Ann. § 28–2–905; *Baker Revocable Trust*, 164 P.3d at 857); *Richards v. JTL Group, Inc.*, 212 P.3d 264, 274 (Mont. 2009) (citing *Baker Revocable Trust*, 164 P.3d at 866, 869–70).

"An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations." *Id.* (citations and internal quotation marks omitted). "If the court determines that the instrument contains no ambiguity, then the extrinsic evidence may not be considered further." *Baker Revocable Trust*, 164 P.3d at 866. "If the court finds that contract language is ambiguous, it may consider extrinsic or parol evidence to resolve the ambiguity." *Anaconda Pub. Schs.*, 268 P.3d at 1262 (citing Mont. Code Ann. § 28–2–905; *Baker Revocable Trust*, 164 P.3d at 857–858).

When considering extrinsic evidence—whether to determine if an ambiguity exists or to resolve the ambiguity—Montana courts consider only "objective" extrinsic evidence. *Baker Revocable Trust*, 164 P.3d at 866. "Objective" evidence includes "the situation of the subject of the instrument and of the parties to it." *Id.* (citing Mont. Code Ann. § 1–4–102). Stated differently, "objective" extrinsic evidence "'is evidence of ambiguity that can be supplied by disinterested third

parties, such as custom or usage of the trade. This kind of evidence is admissible because the ability of one of the contracting parties to fabricate such evidence is limited.'" *Id.* (quoting *Home Ins. Co. v. Chicago & Northwestern Transp. Co.*, 56 F.3d 763, 768 (7th cir. 1995)).

It is inappropriate to consider "subjective extrinsic evidence." "[S]ubjective evidence of ambiguity is 'the testimony of the parties themselves as to what they believe the contract means, which is invariably self-serving, inherently difficult to verify and thus, inadmissible.'" *Richards*, 212 P.3d at 273–74 (quoting *Baker Revocable Trust*, 164 P.3d at 866).

Unlike the existence of an ambiguity, the resolution of an ambiguity is a fact question that is ordinarily left to the jury. *See Klawitter v. Dettmann*, 886 P.2d 416, 420 (Mont. 1994); *see also Baker Revocable Trust*, 164 P.3d at 857. Thus, summary judgment as to the intent or meaning of an ambiguous contract should only be granted if the extrinsic evidence is undisputed.

If the intent is still uncertain in light of the objective extrinsic evidence, then "the provisions should properly be construed against the party causing the uncertainty." *Ellingson Agency, Inc. v. Baltrusch*, 742 P.2d 1009, 1012 (Mont. 1987); *see also Corp. Air v. Edwards Jet Ctr.*, 190 P.3d 1111, 1121 (Mont. 2008).

## B. The 2008–2009 Policy's notice provisions

The 2008–2009 Policy states that Gotham will provide coverage only if "The Claim is first made against the Insured and reported to the Company during the Policy Period." (2008–2009 Policy, Ex. 1, doc. 89-1 at 10.) This requirement raises four potentially relevant questions: (1) What constitutes a "Claim" under the Policy?, (2) When must Allegiance give notice of the claim?, (3) How must Allegiance give notice?, and (4) to whom must Allegiance give notice?

The parties unnecessarily discuss the last two questions at length because answering the first two questions to resolves this case. Allegiance received a claim in the 2008–2009 Policy Period but it failed to timely give notice to Gotham during that policy period. How notice was given and to whom notice was given thus becomes irrelevant.

### 1. What constitutes a "Claim" under the 2008–2009 Policy?

The 2008–2009 Policy defines a Claim as "a written demand for money or services received by the insured, including service of suit and including declaratory judgment actions or the demand for arbitration proceedings against the Insured." (2008–2009 Policy, Ex. 1., doc. 89-1 at 10.)

The objective evidence shows that this definition is ambiguous. Does "a written demand for money or services" refer to demands that allege a negligent

act, error, or omission? Or does it mean all demands for money or services that the insured receives, including routine demands that benefit plan participants make under their benefit plans where no negligence is alleged? Allegiance's role as a third-party administrator illustrates the important distinction in these two questions.

Allegiance deals exclusively in demands for money or services. As a third party administrator, Allegiance's business function is to administer demands for money or services that plan participants make under their benefit plans. Reading the 2008–2009 Policy's definition of "Claim" to include all demands for money or services—including those that benefit plan participants routinely make under their benefit plans where no negligence is alleged—is legally unrealistic because virtually all of Allegiance's business transactions would then involve a "Claim."

The custom and usage of claims-made policies and the Policy language here shows that such a broad interpretation of "Claim" is untenable. *See Baker Revocable Trust*, 164 P.3d at 866. The fundamental purpose of the 2008–2009 Policy is to provide coverage for a "negligent act, error, or omission [that] took place in the rendering of or failure to render Professional Services." (2008–2009 Policy, Ex. 1., doc. 89-1 at 5.) So, unless a demand for money or services is based on some negligent act, error, or omission, there is no coverage. Routine business

assertions do not amount to a covered claim.

A covered Claim must allege some negligent act, error, or omission. This conceptualization is consistent with the commonly understood purpose of a claims made policy—to provide coverage for negligent acts, errors, or omissions that the insured commits in offering or failing to offer its professional services. *See e.g. Russoniello v. Twin City Fire Ins. Co.*, 2010 WL 2024084 at *4 (D. N.J. May 20, 2010).

The exemplary language in the definition for "Claim"—"including service of suit and including declaratory judgment actions or the demand for arbitration proceedings against the Insured"—shows that a "Claim" must involve allegations of wrongful conduct, not Allegiance's routine business transactions.

Reading the 2008–2009 Policy as a whole and reading it in the context of the custom or usage in the trade, a Claim can only be understood to mean a demand for money or service that alleges some "negligent act, error, or omission [that] took place in the rendering of or failure to render Professional Services." (2008–2009 Policy, Ex. 1, doc. 89-1 at 5.)

## 2. When must Allegiance give notice of a claim?

The plain language of the 2008–2009 Policy requires the insured to provide notice of a claim in the same policy period when "[t]he Claim is first made."

(2008–2009 Policy, Ex. 1, doc. 89-1 at 5.) If a claim is made in one policy period but notice is given in another, then there is no coverage. Other courts have interpreted this requirement to be clear and unambiguous. *See Manufactured Housing Communities of Wash. v. St. Paul Mercury Ins. Co.*, 660 F. Supp. 2d 1208, 1212 (W.D. Wash. 2009) (collecting cases); *see also Or. Schs. Activities Assn. v. Natl. Union Fire Ins. co. of Pittsburgh*, 279 Fed. Appx. 494, 495 (9th Cir. May 22, 2008).

### C.  The Gendron claim and Allegiance's notice to Gotham of that claim

The policy period for the 2008–2009 Policy was May 31, 2008, through May 31, 2009. Gotham insists that Gendron made a claim to Allegiance within that policy period but that Allegiance did not notify Gotham of the claim until the following policy period. Gotham has it right. The undisputed facts show that Gendron first made her claim in the 2008–2009 Policy Period but that Allegiance did not provide notice to Gotham until at least the 2009–2010 Policy Period.

In her very first letter—dated August 26, 2008—Carls advises Allegiance that her client, Gendron, was involved in a motor vehicle accident and that Allegiance had wrongfully denied coverage on various outstanding medical expenses. (Carls Correspondence, Ex. B, doc. 72-2.) This type of claim is not a

run-of-the-mill, initial demand for benefits. Instead, Gendron, through her attorney, demanded that Allegiance pay benefits that she claims Allegiance had already wrongfully denied. The initial claim or demand is based on Allegiance's alleged negligent act, error, or omission.

In follow-up letters, Carls continues to argue that Allegiance wrongfully refused to provide coverage. (*See e.g.* Carls Correspondence, Ex. E, doc 72-5.) On November 14, 2008, clearly within the policy period and coverage time frame, Carls wrote Allegiance and threatened to file a lawsuit if Allegiance did not respond and explain why it denied coverage. (*See e.g.* Carls Correspondence, Ex. D, doc. 72-4.)

While Gendron made her claim during the 2008–2009 Policy Period, the undisputed facts show that Allegiance did not report it until at least the 2009–2010 Policy Period. By its own admission, Allegiance acknowledges that it did not provide notice to Gotham until February 25, 2010, when it sent an e-mail to David Wash. (Allegiance's Opening Br., doc. 71 at 12–19.) Allegiance's untimely notice is fatal, regardless of whether the insurer was prejudiced by the untimely notice. *See Burns v. Intl. Ins. Co.*, 929 F.2d 1422, 1424–25 (9th Cir. 1991) (observing that the notice-prejudice rule does not apply to claims-made policies); *see also Westport Ins. Corp. v. Markham Group Inc. PS*, 2010 WL 4643018 (9th Cir.

2010); *Or. Schs. Activities Assn. v. Natl. Union fire Ins. Co. of Pittsburgh*, 2008
WL 2151443 (9th Cir. 2008).

Because the claim was made and reported in different policy periods,
Allegiance is not entitled to coverage from Gotham for Gendron's claim and
Gotham is entitled to summary judgment. Since there is no coverage, it is
unnecessary to resolve the questions of how Allegiance should have given notice
or to whom that notice should have been given (i.e., could Allegiance have
properly given notice through Wash?). Even assuming that the mechanism of
notice was proper and that Wash could take notice on Gotham's behalf,
Allegiance's notice was still untimely.

Allegiance makes a two-pronged reproach to this reasoning. First, it insists
that Carls' letters do not expressly mention any claims handling violations and,
therefore, do not constitute a "Claim" as contemplated by the 2008–2009 Policy.
Second, Allegiance argues that the Policy does not cover Gendron's medical
expenses and that any lawsuit seeking to recover those expenses would come from
the Montana University Plan, not Allegiance. The arguments are unpersuasive.

The Carls letters argue that Allegiance was mishandling Gendron's claims.
Carls alleged that Allegiance was wrongfully refusing to pay benefits in violation
of Montana law. (*See* Carls Correspondence, docs. 72-2 to 72-10.) She also

asserted that Allegiance was failing to timely communicate with her. (*Id.* at doc. 72-4.) Because of this alleged misconduct, Carls said that she would recommend to Gendron that she file a class action lawsuit against Allegiance if they were not able to resolve the matter. (*Id.* at 72-7.)

Even if Allegiance had a valid defense against Gendron's claims—because Allegiance was not the entity responsible for paying Gendron's medical expenses—the fact remains that Gendron still made a claim against Allegiance. Regardless of the strength of Allegiance's defense, Allegiance was required to provide notice of even frivolous or meritless claims. *See e.g. Pension Trust Fund for Operating Engrs. v. Fed. Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002); *Reese v. Travelers Ins. Co.*, 129 F.3d 1056, 1061 (9th Cir. 1997); *Grindheim v. Safeco Ins. Co. of Am.*, 908 F. Supp. 794, 805 (D. Mont. 1995); *Mut. Serv. Cas. Ins. Co. v. Co-op Supply, Inc.*, 699 F. Supp. 1438, 1440 (D. Mont. 1988). Nothing in the 2008–2009 Policy suggests that Allegiance need only report meritorious claims. For coverage to exist, it needed to report any claim, including Gendron's.

Since Gotham is entitled to summary judgment because of Allegiance's untimely notice, it is unnecessary to address Gotham's alternative theory for summary judgment.

## II.     David Wash, Excel Underwriters Alliance, and Mutual Marine Office

In possible anticipation of an unwanted result, Allegiance filed a third-party complaint against David Wash, Mutual Marine Office, and Excel Underwriters Alliance. It argues that if the Court concludes that Allegiance's communications with Wash did not constitute proper notice, then Wash, Mutual Marine Office, and Excel Underwriters Alliance are liable because Wash represented that he could take notice of the Gendron claim on Gotham's behalf.

Wash, Mutual Marine, and Excel Underwriters Alliance all move for summary judgment. Each motion is well-taken. Regardless of whether Allegiance could have given proper notice to Wash, there was no coverage for the Gendron claim when Allegiance told Wash about the problem claim. As discussed above, Allegiance had to give notice of the claim during the 2008–2009 Policy Period, so it had to give notice by May 31, 2009. But it did not contact Wash until February 25, 2010. Regardless of whether Wash could take notice of the claim, the notice was untimely, and there was no coverage. Thus, Wash, Mutual Marine, and Excel Underwriters did not cause Allegiance any damages, and none are on the hook for lack of coverage.

## III.    Motions to seal

Gotham, Wash, Mutual Marine, and Excel Underwriters Alliance move to

seal a few of the exhibits that they filed:

- Exhibit 11: Carls' May 14, 2009 letter to Witte;

- Exhibit 16, D: Cowan's December 14, 2010 letter to Wash;

- Exhibit 18, E: Witte's October 8, 2009 memo to Visser and Dewnup; and

- Exhibit 26, M: Excerpts of Cowan's deposition.

Allegiance does not oppose the motion.

These exhibits contain personal and medical information and attorney/client information (that might or might not be privileged). The sensitive information is scattered throughout the documents, which would make redaction onerous. The motion for leave to file these four exhibits under seal is granted.

## IV.   Motions in limine

Gotham, Wash, Mutual Marine, and Excel Underwriters Alliance all move to exclude the testimony of Adam Russo, James Smith, and James Martocci. Gotham and the others make similar arguments with respect to each of these witnesses. They argue (1) that the witnesses are not qualified to render expert opinions, (2) their opinions are not grounded in the facts or law, and (3) the opinions are founded on impermissible legal conclusions. These motions are denied as moot. It is unnecessary to address the testimony of these witnesses in

order to resolve the merits of the case.

## V.     Allegiance's response to Gotham's objections

Gotham filed eight pages of objections to evidence that Allegiance submitted as part of its summary judgment briefing. Regardless of whether this was the appropriate avenue for voicing these objections, no response is necessary because there is no need to address the objections in order to resolve the merits of this case. As a result, Allegiance's motion to respond to the objections is denied as moot.

CONCLUSION

The parties have thoroughly briefed the issues in this case. Allegiance is not entitled to coverage from Gotham for the simple reason that it failed to timely provide notice to Gotham of Gendron's claims.

IT IS ORDERED that Gotham Insurance Company's motion for summary judgment (doc. 80) is GRANTED IN PART and DENIED AS MOOT IN PART. Gotham's motion for summary judgment is GRANTED as to its claim for declaratory relief. Gotham has no duty to defend or indemnify Allegiance Benefit Plan Management Inc. in the *Gendron* lawsuit. The Court DENIES AS MOOT Gotham's motion for summary judgment as to its claim for rescission. There is no need to address the rescission claim in order to resolve the merits of this case.

IT IS FURTHER ORDERED that, for the reasons above, Allegiance's motion for summary judgment (doc. 70) is DENIED.

IT IS FURTHER ORDERED that David Wash and Excel Underwriters Alliance's motion for summary judgment (doc. 77) and Mutual Marine Office Inc.'s motion for summary judgment (doc. 83) are GRANTED.

IT IS FURTHER ORDERED that the motions for leave to file certain documents under seal (docs. 92, 106) are GRANTED. Gotham, David Wash, Excel Underwriters Alliance, and Mutual Marine Office may file those documents under seal.

IT IS FURTHER ORDERED that the motions in limine (docs. 108, 110, 112) are DENIED AS MOOT.

IT IS FURTHER ORDERED that Allegiance's motion for leave to file a response to Gotham's objections (doc. 136) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of Gotham, Wash, Excel Underwriters Alliance, and Mutual Marine Office and close this case.

Dated this 24th day of August 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT